**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CIVIL ACTION NO. 09-47-JBC

PETER PAPPAS,                                                          PLAINTIFF,

V.                              <u>MEMORANDUM OPINION AND ORDER</u>

JEFFREY SIDLES, ET AL.,                                               DEFENDANTS.

* * * * * * * * * * *

This matter is before the court on the defendants' motion for summary

judgment (R. 24) and the plaintiff's motion for partial summary judgment against

defendants Jeffrey Sidles and Everette Dewayne Myers (R. 27).  The court will

grant the motions in part, deny them in part, and require further briefing on the

plaintiff's duty-to-pay-medical-expenses claim.

**I.  BACKGROUND**

On February 22, 2008, Kentucky State Police officers arrested the plaintiff,

Peter Pappas, at Pappas's home in Falmouth, Kentucky, on outstanding warrants

from Nicholas and Scott counties.  R. 24 Ex. 2 at 21; R. 26 Ex. 2 at 1.  When the

officers arrived at Pappas's home, Pappas was breathing from a mask connected to

a device called a nebulizer.  R. 26 Ex. 2 at 3.  Pappas used the nebulizer to alleviate

symptoms of Chronic Obstructive Pulmonary Disease ("COPD"), from which Pappas

has suffered since 2006.  *Id*. Ex. 3.  COPD manifests from lung damage, which

causes air to become trapped in the lungs, decreases the amount of oxygen inhaled

and exhaled, and increases the amount of carbon dioxide stored in the lungs. *Id*.

Ex. 4 at 43-44. The nebulizer converts Albuterol, a medicinal solution, into a fine,

aerosol-like spray, which penetrates Pappas's lungs and dilates his airways. R. 26

Ex. 2 at 45-46. A treatment takes about twelve minutes to complete. *Id*. Ex. 2 at

4.

The officers allowed Pappas to complete his treatment before arresting him,

and they allowed him to take his nebulizer and medicine when he left the house. R.

24 Ex. 1 at 25. The officers drove Pappas to Carlisle Police Department in Nicholas

County. Nicholas County does not have a jail but maintains a contract with

Montgomery County to house Nicholas County inmates at Montgomery County

Regional Jail. The Nicholas County jailer, defendant Jeffrey Sidles, called the

Montgomery County jailer, defendant Everette Dewayne Myers, and asked whether

Montgomery County Regional Jail would accept an inmate with a nebulizer. R. 24

Ex. 3 at 16. Myers told Sidles that his facility had accommodated inmates with

nebulizers before, and he agreed to house Pappas. *Id*.

A Nicholas County deputy jailer drove Pappas to Montgomery County

Regional Jail, where staff booked Pappas and placed him in a cell. Pappas typically

uses his nebulizer once a day or does not need it at all; at the time he was booked,

he was using it seven or eight times a day. R. 26 Ex. 2 at 10. Pappas claims that

he told Montgomery County Regional Jail staff, including defendants Dennis

Scribner, Charles Webb, and Sherry Greene, that he was not feeling well and asked

to see a doctor or nurse on multiple occasions. Pappas also claims that the deputies stored the nebulizer in a room outside Pappas's cell for the majority of his time in jail, which sometimes prevented Pappas from performing breathing treatments when he needed them. Webb, Scribner, and Greene dispute that Pappas asked for medical assistance and maintain that they allowed him to use the nebulizer when he asked to use it.

Five days into Pappas's detention, the jail's contract nurse, defendant Kathy Skaggs, and the jail's contract doctor, Ronald Humphrey, conducted their once-a-week "sick call" at the jail. Skaggs noticed that Pappas was wheezing and appeared dusky and blue in the face. Humphrey examined Pappas and decided that Pappas needed to go to the hospital. By the time Pappas arrived at the hospital, his blood gas measured 49; any measurement below 79 is considered acute respiratory failure. R. 26 Ex. 4 at 17. Doctors intubated Pappas, placed him on a ventilator, and maintained a sedation-induced coma for four days. Pappas claims that he incurred significant expenses from his hospitalization.

Pappas sued Sidles and Myers in their official and individual capacities; and Skaggs, Webb, Scribner, and Greene in their individual capacities. Pappas asserted claims for violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983; violation of Section 17 of the Kentucky Constitution, which proscribes cruel punishment; negligence; and reimbursement of his medical expenses from Nicholas and/or

3

Montgomery counties. Pappas also sued unknown defendants but failed to make additional named defendants parties to the action.

Defendants have moved for summary judgment. Sidles and Myers claim that they are entitled to sovereign immunity in their official capacities and qualified immunity in their individual capacities. Skaggs, Webb, Scribner, and Greene claim that they are entitled to qualified immunity. Additionally, all defendants claim that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law on the merits of all of Pappas's claims.

Pappas has moved for summary judgment on all of his claims against Sidles and Myers. Pappas does not move for summary judgment on any of his claims against Skaggs, Webb, Scribner, and Greene. He reserves the issue of damages as to all defendants.

## II. OFFICIAL-CAPACITY CLAIMS AGAINST SIDLES AND MYERS

### A. Section 1983 claims

Sidles and Myers are not entitled to sovereign immunity from Pappas's section 1983 claims against them in their official capacities because Pappas alleges that an official policy, practice, or decision of a final policymaking official violated his constitutional rights.

A plaintiff who asserts a claim against a municipal officer in his or her official capacity asserts a claim against the municipal entity for which the officer acts. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Federal law determines whether

a municipality may assert sovereign immunity against a section 1983 action. *Howlett v. Rose*, 496 U.S. 356, 376-77 (1990); *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). A municipality is immune from *respondeat superior* liability if an agent of a municipality deprives a citizen's constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). A municipality, however, does not enjoy immunity when a plaintiff identifies a municipal policy, a widespread and permanent practice, or a decision of a person with final policymaking authority that allegedly deprives him or her of a constitutional right. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-27 (1988).

Pappas has identified an offending policy: Montgomery County Fiscal Court's contract with its doctor, Ronald Humphrey. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 252 (1981). Montgomery County Regional Jail housed between 151 and 154 inmates when Pappas resided there. The Montgomery County Jail Policy Manual requires officials to make a medical authority available for sick call three times a week in jails with a population of 100 to 300 inmates. R. 26 Ex. 12 at 3-4. But in his deposition, Humphrey testified that he confined his three-hour commitment to one day a week, forty-eight weeks a year, and he did not consider himself on call because the contract required him to perform only "clinic services" at the jail. *Id*. Had Montgomery County contracted to provide more frequent medical care, Pappas claims, he could have obtained timely medical attention. *Id*. at 27. As a result, Pappas has identified a policy that allegedly

violated his constitutional right. Montgomery County cannot claim immunity from Pappas's claim.

Nicholas County's contract with Montgomery County to house Nicholas County detainees also qualifies as a policy. *See Fact Concerts*, 453 U.S. at 252. The contract, which the Nicholas County judge executive executed on behalf of the county, indicates that Nicholas County was willing to accept Montgomery County's policies by housing its detainees in Montgomery County. Nicholas County, therefore, cannot claim immunity.

Although Sidles and Myers are not entitled to sovereign immunity in their official capacities, summary judgment is inappropriate on the merits in favor of any party. To prevail on his official-capacity claims, Pappas must show that he suffered a particular injury because of the execution of the allegedly offending policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). Genuine issues of material fact exist as to whether Montgomery County's failure to contract for more medical coverage caused Pappas's injury. The parties, for example, dispute whether Pappas actually complained to jail staff about his breathing problems and requested medical attention. If he did not, Pappas could have trouble proving that more frequent medical attention would have made a difference. Humphrey, moreover, testified that when he examined Pappas he could not determine how long Pappas had been in respiratory failure. Pappas cannot prove causation if he cannot establish that he had a serious medical need during the time he allegedly

asked for help.  A jury must resolve fact issues such as these.

      B.  <u>Kentucky constitutional and negligence claims</u>

Sidles and Myers in their official capacities are entitled to summary judgment on Pappas's claims for violation of Section 17 of the Kentucky Constitution and negligence because Sidles and Myers enjoy official immunity under Kentucky law.

    State law determines whether a government official is entitled to immunity from a state law claim. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). In Kentucky, a county enjoys immunity from state-law claims. *Lexington-Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 133-34 (Ky. 2004).  A jailer is an officer of a county.  Ky. Const. § 99.  A claim, therefore, against a jailer in his or her official capacity is a claim against a county, and a jailer is cloaked in a county's sovereign immunity. *Commonwealth Bd. of Claims v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001).

As officers of their respective counties, Sidles and Myers enjoy official immunity from official-capacity claims under state law.  The court must grant summary judgment in favor of Sidles and Myers on the Kentucky constitutional and negligence claims.


## III.  SECTION 1983 CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Summary judgment is appropriate in favor of Sidles and Myers in their individual capacities and in favor of Skaggs because these defendants enjoy

qualified immunity from suit.  Summary judgment is not appropriate in favor of

Webb, Scribner, and Greene, because they do not enjoy qualified immunity and

genuine issues of material fact as to their liability exist.  The court addresses

qualified immunity, then the merits of the claims.

    A.  <u>Qualified immunity</u>

A court, not a jury, must consider a claim of qualified immunity as a

threshold issue.  *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008).  A

government official performing discretionary functions is immune from liability

when his or her conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  A court must apply a two-prong test to

determine qualified immunity.  First, viewing the evidence in a light most favorable

to the plaintiff, a court must determine whether the plaintiff has shown that a

constitutional violation occurred.  Second, a court must determine whether the

claimed constitutional right was clearly established at the time of the violation.

*Phillips*, 534 F.3d at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306,

311 (6th Cir. 2006)).

    1.  *Whether a constitutional violation occurred*

The Eighth Amendment's prohibition of cruel and unusual punishments

applies only to a convicted prisoner, not to a pretrial detainee.  But the Due Process

Clause of the Fourteenth Amendment affords a pretrial detainee at least the same

8

rights that a convicted prisoner enjoys under the Eighth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). To that end, Section 1983 provides a pretrial detainee a cause of action when prison officials exhibit deliberate indifference by denying or delaying access to medical care for a serious medical need. *Phillips*, 534 F.3d at 539 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). The Section 1983 analysis breaks down into objective and subjective components.

For the objective component, a plaintiff must show the existence of a "sufficiently serious" medical need. *Phillips*, 534 F.3d at 539 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is "sufficiently serious" when it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention . . . ." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900-01 (6th Cir. 2004). In *Blackmore*, for example, the court held that a pretrial detainee's medical needs were sufficiently serious where the detainee, who had appendicitis, complained of sharp, constant abdominal pain for two days and vomited while in detention. *Id*. at 899.

The evidence here, viewed in a light most favorable to Pappas, indicates that Pappas had a serious medical need that a layperson would have easily recognized as one requiring a doctor's attention. Pappas claims that he complained of breathing difficulties to jail staff on roughly fifty to sixty occasions. R. 29 Ex. 1 at 10. Pappas also claims that he experienced difficulty walking short distances

without becoming winded. R. 26 Ex. 2 at 5. By the time Humphrey, the jail's contract doctor, examined Pappas, Pappas appeared dusky and blue in the face. R. 29 Ex. 8 at 3. Jail staff, even as laypeople, would have recognized that Pappas needed a doctor's attention after observing him in this state. The evidence is sufficient to satisfy the objective component.

For the subjective component, a plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Phillips*, 534 F.3d at 540 (citations omitted). The court must evaluate each defendant individually. *Id*. at 541-42.

a. Jeffrey Sidles

The record fails to reveal evidence that Sidles subjectively perceived facts from which he could have inferred substantial risk to Pappas. Sidles learned that Pappas needed a nebulizer when one of his deputies called after Pappas was arrested and asked whether Montgomery County Regional Jail could accept an inmate who depended on a nebulizer. The deputy did not advise Sidles that Pappas was asking for medical attention. R. 26 Ex. 7 at 6. Sidles contacted Myers to confirm that Montgomery County Regional Jail would accept Pappas, then instructed his deputy to transfer Pappas to Montgomery County. R. 26 Ex. 7 at 4-5; R. 27 Ex. 4 at 2.

Sidles had one encounter with Pappas after Pappas was booked at the jail.

10

Sidles asked Pappas how he was doing. According to Sidles, Pappas stated that "it's going, I'm just waiting to go to court." R. 29 Ex. 2 at 8. Sidles claimed that Pappas did not indicate he had trouble breathing; "[h]e seemed fine to me." *Id*. Sidles never had personal contact with Pappas again until he visited Pappas at the hospital, at which time he helped Pappas's wife secure bail for her husband. *Id*. Ex. 2 at 9, 14. Pappas does not present evidence that disputes these facts.

None of the evidence suggests that Sidles was aware Pappas was having serious breathing difficulties or needed medical attention while he was in jail. The evidence does not satisfy the subjective component as to Sidles.

b. Everette Dewayne Myers

Pappas claims that Myers satisfies the subjective component because he failed to implement Montgomery County Regional Jail's Medical Emergency Care Plan, which requires jail staff to obtain medical care for an inmate immediately if an inmate has serious breathing difficulty. R. 30 at 9. The evidence, however, does not indicate that Myers personally observed Pappas having breathing difficulty. Nor does the evidence indicate that jail staff notified Myers of Pappas's breathing difficulty until Humphrey directed that Pappas be taken to the hospital. Myers testified that he never saw Pappas "one on one" while Pappas was housed in Montgomery County Regional Jail. R. 27 Ex. 4 at 12-13. Although Myers was aware that Pappas needed the nebulizer, he was unaware of how often Pappas needed to use it. *Id*. Pappas fails to present evidence that disputes these facts.

None of the evidence suggests that Myers was aware that Pappas was having serious breathing difficulty or needed immediate medical attention while he was in jail.  The evidence does not satisfy the subjective component as to Myers.

c.  Kathy Skaggs

Skaggs was the contract nurse for the weekly sick call at Montgomery County Regional Jail.  R. 26 Ex. 13 at 6.  When Skaggs arrived at the jail, she examined Pappas and noticed that he had breathing difficulty, including wheezing.  *Id*.  Ex. 13 at 8.  Skaggs administered a breathing treatment with Pappas's nebulizer.  *Id*.  Ex. 13 at 9.  When Humphrey arrived, Skaggs immediately took Pappas to see the doctor and informed him that Pappas needed to be seen before other inmates.  *Id*. Ex. 13 at 10.  Pappas does not present evidence that disputes these facts.

Skaggs perceived that Pappas had a serious medical condition.  She did not disregard it, however; she took action.  The evidence, therefore, fails to satisfy the subjective component as to Skaggs.

d.  Dennis Scribner

Scribner, a jail deputy, first saw Pappas after jail staff had booked Pappas and placed him in an observation cell.  R. 24 Ex. 12 at 1.  Scribner plugged in the nebulizer.  *Id*. Ex. 12 at 2.  The nebulizer, however, was blowing circuits, so Scribner moved it to a break room farther back in the jail and allowed Pappas to perform his breathing treatments there.  *Id*. Ex. 12 at 2-3.  When asked during his

deposition why Pappas needed to use the nebulizer, Scribner stated it was because "[h]e had trouble breathing."  R. 26 Ex. 12 at 4.

Scribner eventually moved Pappas from the observation cell to another cell closer to the break room.  During the move, Pappas alleges, he told Scribner that he could not carry his mattress to the new cell because he was "out of breath."  R. 26 Ex. 2 at 14.  According to Pappas, Scribner said "that's your problem, carry it or you'll be sleeping on the concrete."  *Id*.  Pappas also alleges that he asked jail staff, including Scribner, to see a doctor at least fifty to sixty times during his detention. *Id*. Ex. 2 at 18-19.  Pappas claims that he asked Scribner for medical attention "[m]any times, probably more than anybody," but the response always was "we're working on it."  *Id*. Ex. 2 at 19.

Viewed in a light most favorable to Pappas, the evidence satisfies the subjective component as to Scribner.  The evidence indicates that Scribner observed Pappas having a breathing problem; that he drew the inference that Pappas needed medical attention; and that he did not seek medical attention for Pappas.

e.  Charles Webb

Webb, a jail deputy, was on duty during Pappas's first night in jail.  R. 24 Ex. 11 at 1.  During the first night, Webb could observe Pappas at all times because Pappas was in an observation cell with a camera trained on him.  R. 24 Ex. 11 at 2. Webb personally checked on Pappas and observed Pappas performing breathing

treatments throughout the night.  R. 24 Ex. 10 at 3.  Webb claims that Pappas never asked him to see a doctor or indicated that he was in respiratory distress.  R. 24 Ex. 11 at 4.  Pappas, however, claims that he told Webb that "they're supposed to be getting me a doctor or a nurse. . . . [D]o you know what's going on?"  R. 26 Ex. 2 at 13.  Pappas claims that Webb said nothing in response, backed out of the cell, and closed the door.  *Id*.

Webb also patrolled the area around Pappas's new cell three nights later.  R. 24 Ex. 11 at 7-8.  Webb claims that Pappas never asked for medical attention, but Pappas claims that he was continually asking jail staff for medical attention, at least fifty to sixty times.  R. 24 Ex. 11 at 7-8; R. 29 Ex. 1 at 10.

Viewed in a light favorable to Pappas, the evidence satisfies the subjective component as to Webb.  The evidence indicates that Webb observed Pappas having a breathing problem; that he drew the inference that Pappas needed medical attention; and that he did not seek medical attention for Pappas.

f.  Sherry Greene

Greene, a jail deputy, was advised that Pappas was having trouble breathing.  R. 26 Ex. 9 at 6.  She observed Pappas sitting outside his new cell while he was administering a breathing treatment.  R. 26 Ex. 9 at 5.  According to Greene, Pappas took off his mask and asked for a guard to come back and let him in his cell because he needed a cigarette.  *Id*.  Greene admitted that she believed Pappas did not really have a breathing problem because he was smoking.  *Id*. Ex. 9 at 6.

14

Greene claims that Pappas never asked for medical attention, but Pappas claims that Greene was one of the jail staff of whom he asked for help at least fifty to sixty times.  R. 24 Ex. 11 at 4; R. 29 Ex. 1 at 10.

Viewed in a light most favorable to Pappas, the evidence satisfies the subjective component as to Greene.  The evidence indicates that Greene was aware that Pappas had a breathing problem; that she drew the inference that Pappas needed medical attention; and that she did not seek medical attention for Pappas.

2. *Whether the claimed constitutional right was clearly established at the time of violation*

A clearly established right is one that is sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  As early as 1972, the Sixth Circuit recognized that inmates enjoy a right to adequate medical care for injury or illness, and that a denial of medical care or illness is a deprivation of constitutional due process. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (citing *Fitzke v. Shappell*, 468 F.2d 1072, 1072 (6th Cir. 1972)).  The Supreme Court also has long recognized the right. *Mass. Gen. Hosp.*, 463 U.S. at 244.  Pappas's right to medical care is clearly established.

3. *Disposition of qualified immunity claims*

In sum, Sidles and Myers in their individual capacities are entitled to qualified immunity because the evidence, even when viewed in a light most favorable to Pappas, indicates that they did not perceive facts from which they inferred risk to

15

Pappas. Skaggs is entitled to qualified immunity because she did not disregard the risk to Pappas. Summary judgment, therefore, is appropriate for Sidles and Meyers in their individual capacities and Skaggs.

Scribner, Webb, and Greene are not entitled to qualified immunity because (a) the evidence, viewed in a light most favorable to Pappas, indicates that they subjectively perceived facts from which to infer substantial risk to Pappas, that they drew such an inference, and that they disregarded the risk; and (b) Pappas's claimed constitutional right is clearly established.

B. <u>Merits of the Section 1983 claims against Scribner, Webb, and Greene</u>

Summary judgment is inappropriate for Scribner, Webb, and Greene on the merits of the Section 1983 claims because the record, viewed in a light most favorable to Pappas, presents genuine issues of material fact that must be resolved by a jury. *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 999 (6th Cir. 1999) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)).

The substantive test for Pappas's Section 1983 claims is identical to that applied to determine whether a constitutional violation occurred as part of the qualified immunity analysis above. First, Pappas must demonstrate the existence of a "sufficiently serious" medical need. *Phillips*, 534 F.3d at 539 (citation omitted). Second, Pappas must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that

risk." *Id*. at 540.

Scribner, Webb, and Greene move for summary judgment on the basis that "[t]here is no evidence that the Defendants were aware of facts from which the inference could be, and was drawn, that a substantial risk of serious harm existed." R. 24 at 11. Pappas, however, presents evidence that contradicts their assertion. Among other things, Pappas alleges that he asked jail staff to see a doctor at least fifty to sixty times during his detention. R. 26 Ex. 2 at 18. He identified specific encounters with Scribner, Webb, and Greene, when he asked for medical attention but did not receive it. *Id*. Ex. 2 at 13, 18-19. In addition to asking for a doctor, Pappas claims, he complained of shortness of breath on multiple occasions. *See, e.g.*, *id*. Ex. 2 at 14. Viewed in a light most favorable to Pappas, these facts could establish that Scribner, Webb, and Greene observed that Pappas had a serious medical need, drew an inference that substantial risk of harm existed, and disregarded the risk. Summary judgment is inappropriate when fact issues such as these remain in dispute.

## IV. NEGLIGENCE AND KENTUCKY CONSTITUTIONAL CLAIMS AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Summary judgment in favor of Sidles and Myers in their individual capacities and Skaggs on the negligence and Kentucky constitutional claims is appropriate because they are entitled to official qualified immunity under Kentucky law. Summary judgment in favor of Scribner, Webb, and Greene is inappropriate because they are not entitled to official qualified immunity and genuine issues of material

fact exist as to their liability. The court addresses qualified immunity, then the merits of the claims.

A. <u>Qualified official immunity</u>

In Kentucky, qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts; (2) in good faith; and (3) within the scope of the employee's authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2002). The parties do not appear to contest that the defendants' acts are discretionary and within the scope of their authority. They do contest whether the acts were performed in good faith.

The good-faith requirement is analogous to the test for qualified immunity under federal law. *See id*. at 523. The absence of good faith can be shown when a defendant violates a "constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id*.

Here, the qualified immunity test under federal law yields the same result under the state law test. Sidles and Myers are entitled to qualified immunity because they had limited personal contact with Pappas. The evidence fails to demonstrate that Sidles and Myers were aware that Pappas was having serious breathing difficulties or needed immediate medical attention while he was in jail.

Objective unreasonableness, willful or malicious intent to harm Pappas, or corrupt motive are absent on their part. The evidence, likewise, indicates that Skaggs did not exhibit bad faith; she immediately sought medical attention for Pappas after she examined him. Sidles, Myers, and Skaggs are entitled to qualified official immunity under state law.

Scribner, Webb, and Greene, however, are not entitled to official qualified immunity. Viewed in a light most favorable to Pappas, the evidence indicates that Scribner, Webb, and Greene acted with at least objective unreasonableness in a light of Pappas's allegations that he made these defendants aware of his breathing difficulties and asked them for medical help in vain.

B. <u>Merits of the negligence claims against Scribner, Webb, and Greene</u>

Summary judgment is inappropriate for Scribner, Webb, and Greene on the negligence claim because genuine issues of material fact exist.

A jailer has a duty of care to treat a prisoner humanely. KRS § 71.040. *See also Sudderth v. White*, 621 S.W.2d 33, 35 (Ky. 1981). Scribner, Webb, and Greene request summary judgment on the basis that "[a]ll the evidence presented illustrates that the Plaintiff was actually treated very humanely." R. 24 at 21. Pappas directly disputes that assertion in his allegations about the care he received from Scribner, Webb, and Greene, thereby precluding summary judgment on the duty of care.

Scribner, Webb, and Greene also argue that Pappas cannot demonstrate that

any breach of the duty of care is causally linked to Pappas's injury because the record lacks expert testimony establishing causation. Defendants argue that Pappas cannot establish causation because the doctors who treated Pappas testified that they could not speculate as to when Pappas's symptoms began to escalate. R. 24 at 21.

Defendants' argument fails because the doctors' testimony contains other evidence that could establish causation. For example, Rezkalla Butros, the doctor who treated Pappas at the hospital, identified indicators that would signal a patient with COPD is sick, such as fighting to take a breath, losing consciousness, struggling to speak words, or using neck or chest muscles to breathe. R. 24 Ex. 11 at 10. Pappas alleges that he exhibited similar characteristics when he was in jail. *See* R. 26 Ex. 2 at 13. A reasonable jury could pair the doctors' expert testimony with circumstantial evidence from testimony of Pappas and other lay witnesses and conclude that Pappas fell ill while he was in jail. Circumstantial evidence could be sufficient to prove causation where the evidence reasonably establishes a causal connection between the alleged negligence and the injury. *Johnson v. Vaughan*, 370 S.W.2d 591, 597 (Ky. 1963) (citation omitted). Accordingly, summary judgment in favor of Scribner, Webb, and Greene on the negligence claim is inappropriate.

C. <u>Merits of the Kentucky Constitutional claim against Scribner, Webb, and Greene</u>

The parties agree that substantive analysis of Pappas's claim under Section 17 of the Kentucky Constitution is the same as that applied to his Section 1983 claim. Neither party, however, addresses whether Section 17 applies to a pretrial detainee.

Few cases address the application of Section 17 to a pretrial detainee. In unpublished opinions, federal courts have held that a pretrial detainee's claim under Section 17 must be dismissed because, like the Eighth Amendment, Section 17 does not apply to pretrial detainees. *See Simms v. City of Harrodsburg*, No. 5:06-cv-104-JMH, 2007 U.S. Dist. LEXIS 70250, *15-16 (E.D. Ky. 2007); *Allen v. Siddiqui*, No. 3:07-cv-261-H, 2007 U.S. Dist. LEXIS 84314, *10-11 (W.D. Ky. 2007). In these cases, however, the courts fail to consider whether the Kentucky Constitution provides a right akin to the due process right provided in the U.S. Constitution that guarantees a pretrial detainee's right to medical care.

Section 2 of the Kentucky Constitution prohibits the use of arbitrary power. The Supreme Court of Kentucky has held that this prohibition encompasses the due process concept. *Commonwealth Natural Res. & Envtl. Prot. Cabinet v. Kentec Coal Co.*, 177 S.W.3d 718, 724 (Ky. 2005) (citing *Pritchett v. Marshall*, 375 S.W.2d 253 (Ky. 1963)). Section 2, therefore, can be read to provide a pretrial detainee the right to medical care analogous to the due process right that a pretrial detainee enjoys under the Fourteenth Amendment.

The Eighth Amendment and Section 17, which the Fourteenth Amendment

21

and Section 2 respectively apply to a pretrial detainee, are nearly identical. The parties agree that the substantive application is the same under federal and state law. The court, therefore, incorporates the substantive Section 1983 analysis in the substantive state constitutional analysis. The evidence, viewed in a light most favorable to Pappas, presents factual disputes about whether Scribner, Webb, and Greene were aware that Pappas needed medical attention and, if so, what they did as a result of their awareness. A jury must resolve these issues, and summary judgment must be denied.

## V. DUTY TO PAY MEDICAL EXPENSES

Both parties have moved for summary judgment on whether Nicholas and/or Montgomery counties are responsible for covering the medical expenses that Pappas incurred while he was in the hospital. "The cost of providing necessary medical, dental, and psychological care for indigent prisoners in the jail shall be paid from the jail budget." KRS § 441.045(3).

The Supreme Court of Kentucky has granted discretionary review of the Kentucky Court of Appeals's opinion in *Hospital of Louisa v. Johnson County Fiscal Court*, No. 2009-SC-0280-D, which involves the issue of whether KRS § 441.045(3) applies to prisoners released on bail. The disposition of *Hospital of Louisa* could be relevant to this case for two reasons. First, Pappas was released from custody on bond while he was hospitalized. That fact could affect whether and the extent to which Nicholas and/or Montgomery counties must reimburse Pappas. Second, if the Supreme Court of Kentucky issues a broad ruling in *Hospital*

22

*of Louisa*, its opinion might provide guidance on whether KRS § 441.045(3) provides Pappas a private cause of action against the counties.

The court will require the parties to address this matter further.

## VI. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** as follows:

(1)  Sidles and Myers's motion for summary judgment on the Section 1983 claims against them in their official capacities (R.  24) is **DENIED** and Pappas's motion for summary judgment on the Section 1983 claims against Sidles and Meyers in their official capacities (R.  27) is **DENIED**.

(2)  Sidles and Myers's motion for summary judgment on the Kentucky constitutional and negligence claims against them in their official capacities (R. 24) is **GRANTED** and Pappas's motion for summary judgment on the Kentucky constitutional and negligence claims against Sidles and Meyers in their official capacities (R. 27) is **DENIED**.

(3)  Sidles, Myers, and Skaggs's motion for summary judgment on the Section 1983 claims against them in their individual capacities (R. 24) is **GRANTED** and Pappas's motion for summary judgment against Sidles and Myers on the Section 1983 claims in their individual capacities (R. 27) is **DENIED**.

(4)  Scribner, Webb, and Greene's motion for summary judgment on the Section 1983 claims (R. 24) is **DENIED**.

(5)  Sidles, Myers, and Skaggs's motion for summary judgment on the Kentucky constitutional and negligence claims against them in their individual

capacities (R. 24) is **GRANTED** and Pappas's motion for summary judgment against Sidles and Myers on the Kentucky constitutional and negligence claims against them in their individual capacities (R. 27) is **DENIED**.

(6)  Scribner, Webb, and Greene's motion for summary judgment on the Kentucky constitutional and negligence claims (R. 24) is **DENIED**.

(7)  As to the cross-motions for summary judgment on the duty-to-pay-medical-expenses claim (R. 24 and R. 27), the parties shall **FILE** memoranda, not exceeding five pages in length, which address the issue of whether this matter should be stayed pending the Supreme Court of Kentucky's disposition of *Hospital of Louisa v. Johnson County Fiscal Court*, No. 2009-SC-0280-D.  Those memoranda shall be filed no later than July 28, 2010.

Signed on  July 21, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY